UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

GREGORY RAMOS,

        Defendant.

16-CR-74
DECISION AND ORDER

      Gregory Ramos was charged in a 4-count superseding indictment with: possessing cocaine base with intent to distribute it on August 14, 2015 (Count 1); possessing cocaine with intent to distribute it on May 23, 2016 (Count 2); possessing a firearm in furtherance of a drug trafficking crime on May 23, 2016 (Count 3); and possessing a firearm while being subject to an order of protection on May 23, 2016 (Count 4). Docket Item 10. On March 22, 2017, a jury acquitted Ramos on Count 1 and convicted him on Counts 2–4. Docket Item 85. Ramos then moved for a judgment of acquittal or, in the alternative, a new trial. Docket Item 96.

      On May 5, 2017, Ramos submitted his motion and supporting memorandum. *Id.* On June 9, 2017, the government filed its opposing papers, Docket Item 109, and on June 23, 2017, Ramos replied, Docket Item 110. After the court heard oral argument and requested further briefing, Ramos filed a memorandum of law on August 25, 2017. Docket Item 119. When the government did not respond, the Court issued a text order directing the government to do so, Docket Item 120, and the government then responded on October 2, 2017, Docket Item 121.

Ramos raises several issues in his motion. First, he contends that the evidence was insufficient to convict him on Counts 2–4, or, in the alternative, that the interests of justice require a new trial on those counts. Second, he contends that Count 1 should have been severed from the other counts and that he was unfairly prejudiced as a result. Third, he contends that the government did not provide him with the required notice under Federal Rule of Evidence 404(b) with respect to evidence that he possessed fentanyl. Fourth, Ramos contends that prosecutorial misconduct during the government's summation prejudiced his right to a fair trial.

## **SUFFICIENCY OF THE EVIDENCE AND JOINDER**

On Count 1, the government presented evidence that in August 2015, Ramos led police on a chase through city streets, ejected drugs from his car, and then abandoned his vehicle and led police on a short chase by foot. On Counts 2–4, the government presented evidence that in May 2016, Ramos led police on a vehicle chase at speeds near 100 mph, ejected drugs and a weapon from his car, and then led police on a foot chase and hid from them. Prior to trial, Ramos asked the court to sever Count 1 from Counts 2–4, but the court denied the motion, finding that if properly instructed, the jury would be able to differentiate between the evidence on Count 1 and the evidence on the other counts.

The jury verdict demonstrates that the court was indeed correct. By acquitting on Count 1 and convicting on Counts 2–4, the jury necessarily considered Count 1 separately from the other counts, evaluated Count 1 differently than the other counts, and reached one conclusion on Count 1 but the opposite conclusion on the other

counts. There was no prejudice to the defendant from trying those four counts together, and his argument to the contrary lacks merit.

Ramos's argument about the sufficiency of the evidence likewise fails. The evidence at trial established that the police chased a vehicle from Niagara Falls across the Grand Island Bridge onto Grand Island and that during the chase, a weapon and a bag filled with white powder were ejected from the vehicle. The vehicle was later found abandoned on Grand Island, and Ramos was found hiding nearby. A white powdery substance coated the interior of the vehicle when it was found, and that substance was tested and found to contain cocaine. Based on that evidence, it was reasonable for a jury to conclude that Ramos possessed a bag of cocaine with intent to distribute it and possessed a weapon in furtherance of that drug trafficking crime while subject to an order of protection.

Ramos contends that because only a small quantity of cocaine actually was collected from the vehicle, the government's proof was insufficient to show that he possessed cocaine intending to sell it. But that argument is misguided. Indeed, because a bag of white powder was ejected from the car during the high-speed chase and exploded when it hit the windshield of the police vehicle, there was no reason to expect more than residue of the white powder to remain in the vehicle when it was found. That the residue was, in fact, cocaine, leads to the more-than-reasonable inference that what was discarded from the vehicle was cocaine as well. And the fact that Ramos ejected both cocaine and a gun leads to the reasonable inference that both were evidence of his guilt from which he was trying to distance himself.

On a Rule 29 motion like this one, the court must "view the evidence in the light most favorable to the government," *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984), and must draw all reasonable inferences in favor of the government. *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). "[I]t is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." *Id*. Here, the jury had ample evidence from which to conclude that Ramos possessed a weapon and possessed cocaine intending to distribute it.

## **PROSECUTORIAL MISCONDUCT**

Ramos's claim of misconduct during the government's summation also lacks merit. A defendant bears a heavy burden when attempting to overturn a conviction based on alleged prosecutorial misconduct. *See United States v. Williams*, 690 F.3d 70, 74– 75 (2d Cir. 2012). When the alleged misconduct occurs during summation, a new trial is required "only in the rare case in which improper statements . . . can be said to have deprived the defendant of a fair trial." *United States v. Caracappa*, 614 F.3d 30, 41 (2d Cir. 2010). In analyzing whether the statements impaired the defendant's right to a fair trial, a court should consider the severity of the misconduct, whether any curative measures were taken, and the strength of the evidence against the defendant. *See id.*

Here, the prosecutor's remarks were triggered by defense counsel's summation in which he suggested that the prosecution colluded with witnesses, engaged in the "art of misdirection," and made "insidious" and "outrageous" arguments that insulted the jurors' intelligence. Defense counsel also accused the prosecutor of being "overly aggressive." The alleged misconduct about which the defense now complains was nothing more than a response to those remarks. Although the prosecutor may have

4

come close to the line by arguing that he was "not here for the paycheck" while defense counsel had the unenviable "job" of defending "an impossible case," those remarks were not so egregious that they deprived Ramos of a fair trial. Moreover, even if the remarks did cross the line, the overwhelming evidence of Ramos's guilt on Counts 2–4 would preclude granting his motion on this ground.

## **RULE 404(B)**

Finally, Ramos argues that he is entitled to a new trial because the government presented proof that he possessed fentanyl in addition to the drugs that he was charged with possessing but did not give him notice of its intent to do so pursuant to Federal Rule of Evidence 404(b). For several reasons, Ramos is incorrect.

First, Ramos was not entitled to notice pursuant to Rule 404(b) because the uncharged fentanyl possession was inextricably intertwined with the cocaine base possession on Count 1. *See United States v. Edwards*, 2018 WL 947652, at * 1 (2d Cir. Feb. 20, 2018) (summary order); *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997); *United States v. Gaggi*, 811 F.2d 47, 61 (2d Cir. 1987). More specifically, the jury heard evidence that Ramos discarded several bags from his vehicle, some containing cocaine base, others containing heroin and fentanyl. "[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44. The evidence here fits all three of those conditions.

Second, even if Ramos was entitled to notice under 404(b), the government's failure to provide explicit notice did not prejudice him. There can be little doubt that Ramos knew that the government intended to submit evidence that he possessed both cocaine base and fentanyl when he was arrested in August 2015. The government's trial exhibits, as well as the discovery provided to Ramos, included evidence that 14 bags of suspected heroin were ejected from Ramos's vehicle and that one of those bags was tested and found to contain both heroin and fentanyl. Docket Item 39. The government's trial brief also noted that Ramos ejected both cocaine base and fentanyl from his vehicle while he was being chased. Docket Item 43 at 3. Therefore, Ramos could not have been surprised when the government offered that evidence at trial. Indeed, the fact that he did not object when that evidence was offered not only demonstrates the lack of surprise but waives the issue as well. And the defendant's argument that he did not object because he was taken by surprise is simply not credible given the numerous instances of notice cited above.

What is more, Ramos was acquitted on the count about which the evidence of fentanyl was offered. More specifically, the evidence of fentanyl was offered with respect only to Count 1 (and to the government's claim that he ejected both cocaine base and fentanyl from his car when he was chased in August 2015). Ramos was acquitted on that count. Conversely, no evidence of fentanyl was offered on Counts 2–4, the counts on which he was convicted.

Ramos argues repeatedly that even though he was acquitted on Count 1, evidence on that count "spilled over" on the other counts to his prejudice. But that argument is nothing more than speculation—and illogical speculation at that. The jury

found that the government failed to prove beyond a reasonable doubt that Ramos possessed cocaine base with intent to distribute it as charged in Count 1.  Given that the proof with respect to fentanyl was identical to that with respect to the cocaine base on Count 1, it is more than reasonable to conclude that the jury found the evidence insufficient to link Ramos to the fentanyl as well.  On the other hand, the jury convicted Ramos on Counts 2–4 where the evidence of possessing drugs and a weapon was overwhelming and compelling.  So just as Ramos's argument that joinder of Count 1 with the other counts prejudiced him lacks merit, his argument that the evidence of fentanyl prejudiced him lacks merit as well.

## **CONCLUSION**

By its verdict, the jury demonstrated that it could and did consider the evidence on Count 1 separately from the evidence on Counts 2–4 and that the court therefore did not err in permitting all four counts to be tried together.  By acquitting Ramos on Count 1 and convicting him on the other counts, the jury demonstrated its ability to distinguish between proof beyond a reasonable doubt and proof that did not meet that standard.  And especially given the overwhelming proof of the defendant's guilt on Counts 2–4, the arguments he raises in his post-trial motion provide no reason to revisit the jury's careful and thoughtful verdict.

The defendant's post-trial motion is DENIED.

SO ORDERED.

Dated:      March 13, 2018
               Buffalo, New York

                                  *s/Lawrence J. Vilardo*
                                  LAWRENCE J. VILARDO
                                  UNITED STATES DISTRICT JUDGE