UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

GREGORY RAMOS,

Defendant.

16-CR-74
DECISION AND ORDER

On March 22, 2017, a jury convicted Gregory Ramos on three of four counts charged against him in the superseding indictment:  possession of cocaine with the intent to distribute it, possession of a firearm in furtherance of a drug-trafficking crime, and possession of a firearm by a person subject to a domestic violence order of protection.  *See* Docket Items 10 and 85.  The convictions stemmed from a high-speed car chase, foot chase, and subsequent arrest in May 2016.  *See* Docket Item 151 at 9-10.  The jury acquitted Ramos of possession of cocaine base with the intent to distribute it.  *See* Docket Items 10 and 85.  That charge was based on a car chase, foot chase, and subsequent arrest in August 2015.  *See* Docket Item 151 at 9.

On May 5, 2017, Ramos moved for a judgment of acquittal or, in the alternative, a new trial.  Docket Item 96.  After the government responded and Ramos replied, Docket Items 109 and 110, the Court heard oral argument on Ramos's motion and requested further briefing.  Docket Item 113.  On March 13, 2018, this Court denied Ramos's motion.  Docket Item 125.  Sentencing was scheduled for April 9, 2018. Docket Item 126.

Shortly before the date for sentencing, Ramos's counsel moved to withdraw.

Docket Item 140. The Court granted that motion and appointed new counsel to

represent Ramos. Docket Item 143. That attorney then asked the Court to adjourn

sentencing pending Ramos's criminal trial in state court and to give counsel time to

familiarize himself with the case. *See* Docket Items 149 and 156. After several

adjournments of the dates for sentencing submissions and argument, *see, e.g.*, Docket

Items 163, 164, 170, 171, and 184, Ramos requested and was given leave to file

additional Rule 29 and Rule 33 motions, *see* Docket Item 185.

On April 10, 2019, Ramos moved to vacate his conviction under Federal Rule of

Criminal Procedure 33 on various evidentiary grounds, Docket Item 194, and under 28

U.S.C. § 2255 due to the alleged ineffective assistance of his trial counsel, Docket Item

195. By then, Ramos's lead trial counsel, John Humann, had passed away. Ramos

subsequently moved to convert his § 2255 motion into a motion under 28 U.S.C. § 2241

or Rule 33. Docket Item 214. On August 12, 2019, the government responded to all

three motions. Docket Item 220.[1]

The Court heard oral argument on September 30, 2019, granted Ramos's

request to convert his § 2255 motion into a motion under Rule 33, and set a further

briefing schedule on his ineffective assistance of counsel claim. Docket Item 229.

Ramos submitted an additional brief on November 18, 2019, Docket Item 239, and the

government responded on November 25, 2019, Docket Item 240.

---

[1] After Ramos moved to vacate his convictions in April 2019, both he and the
government requested several extensions to the briefing schedule, which the Court
granted. *See* Docket Items 198, 201, 208, 210, 212.

For the reasons below, this Court denies Ramos's motions to vacate his convictions under Rule 33.

## BACKGROUND

The Court assumes the reader's familiarity with the facts underlying Ramos's offenses and briefly recounts only those most relevant to the Rule 33 motions.

Ramos was arrested after a high-speed police chase through the City of Niagara Falls, New York; over the Grand Island Bridge; and onto Grand Island, New York. Docket Item 151 at 92-95. At trial, the government presented evidence that Ramos ejected various items from his vehicle during the chase, including "a plastic bag containing a white powder[y] substance," *id.* at 93, and a black bag containing a loaded firearm, *id.* at 81-86.

After the government impounded and searched Ramos's car, United States Drug Enforcement Agency Task Force Officer Cory Higgins observed that a "powdery white substance . . . was coating the entire interior of this vehicle." Docket Item 152 at 179. Officer Higgins did a Narcotic Identification Kit (NIK) test, which gave a preliminary positive result for the presence of cocaine. *Id.* at 181. He then collected representative samples of the white powdery substance, *id.* at 188, which a forensic chemist later tested and found to contain cocaine, Docket Item 153 at 99. The police also found a digital scale and plastic vials in Ramos's vehicle, as well as $804 in the glove compartment. Docket Item 152 at 183-86. In addition, Ramos had $3,640 on his person when he was apprehended. Docket Item 151 at 31.

**DISCUSSION**

A court may grant a new trial under Federal Rule of Criminal Procedure 33 "if the interest of justice so requires." Fed. R. Crim. P. 33. Rule 33 confers broad discretion on a trial court to avert a perceived miscarriage of justice, *see United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992), and a defendant may use a Rule 33 motion to raise a claim that counsel was ineffective, *see United States v. Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010).

Here, Ramos argues that his conviction should be vacated because counsel was ineffective, because certain evidence was improperly admitted, and because the evidence as a whole was insufficient. The Court will address each argument in turn.

## I.   INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To obtain relief due to the ineffective assistance of counsel, a defendant must meet the two-prong test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, counsel's performance must have fallen below an objective standard of reasonableness. *Id.* at 687-88. Second, that failure must have prejudiced the outcome of the proceeding. *Id.*

"A defendant seeking to overturn a conviction on the ground of ineffective assistance of counsel bears a heavy burden." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). With respect to the first prong of the *Strickland* inquiry, "a reviewing court must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'" *Id.* (quoting *Strickland,* 466 U.S. at 689). And to establish prejudice under the second prong, "the defendant must show that . . . 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different.'" *Puglisi v. United States,* 586 F.3d 209, 215 (2d Cir. 2009) (quoting *Strickland,* 466 U.S. at 694).

As explained in more detail below, the decisions that Ramos attacks all fall into the wide ambit of legitimate strategic choices. *See Cromitie v. United States*, 2017 WL 1383982, at *7 (S.D.N.Y. Apr. 7, 2017) ("[A] defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate." (quoting *Albanese v. United States*, 415 F. Supp. 2d 244, 249 (S.D.N.Y. 2005))). The fact that those choices were not, at the end of the day, fully successful does not overcome the strong presumption that his trial counsel's decisions constituted reasonable professional assistance. *See Strickland,* 466 U.S. at 689.

Moreover, even assuming that Ramos could demonstrate deficient performance on the first prong of *Strickland*, he cannot establish a reasonable probability that but for any of these alleged errors, the outcome of his trial would have been different. On the contrary, this Court witnessed firsthand an exemplary job by trial counsel—one that resulted in an aquittal on one count despite strong evidence of guilt.

## A.    Right to Testify

Ramos first claims that his trial counsel violated Ramos's Sixth Amendment right by not allowing him to testify. Ramos submitted a signed affidavit stating that Attorney Humann "met [Ramos] on a few occasions prior to and during the trial" and "[a]t each

meeting [Ramos] had with [Attorney Humann, Ramos] advised him that [Ramos] wanted

to testify on [his] own behalf." Docket Item 196 at 1. Ramos adds that he "was aware

that [he] did have the right to testify and communicated that to [Attorney Humann]." *Id.*

Ramos claims that he would have testified, among other things, about "the

reasons for why [he] possessed the scale, which was found, the legitimate source of the

money which [he] possessed, [and] the legitimate source of the vials found in the car."

*Id.* at 2. Likewise, Ramos says that he "would have testified that the weapon which was

earlier thrown from the vehicle was not related in any way to any drug distribution

activity and the weapon was not possessed in connection to or to facilitate any drug

distribution activity on [his] part." *Id.* Ramos suggests that his attorney did not "allow

[him] to testify." *Id.* at 10. As noted above, his lead trial attorney has passed away and

therefore cannot contest Ramos's assertions.

If Ramos's attorney actually refused to let Ramos testify, that may well be a Sixth

Amendment violation. *See Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997) ("[T]he

decision whether to testify belongs to the defendant and may not be made for him by

defense counsel."). An uncorroborated[2] affidavit, however, is not sufficient to

substantiate such a claim. *See United States v. Castillo*, 14 F.3d 802, 805 (2d Cir.

1994) ("[I]n a subsequent collateral attack on the conviction the defendant must produce

something more than a bare, unsubstantiated, thoroughly self-serving, and none too

plausible statement that his lawyer (in violation of professional standards) forbade him

---

[2] As the government observes, "there was a second chair on [Ramos]'s trial
team" who might have been able to corroborate Ramos's claims. Docket Item 240 at 7.
But Ramos has failed to provide any such corroboration, and the burden is on him to do
so. *See Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991).

to take the stand." (quoting *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991))); *cf.*
*United States v. Mejia*, 18 F. App'x 20, 23 (2d Cir. 2001) (holding that "unsworn, self-
serving assertion [in appellate brief] is insufficient, on its own, to establish ineffective
assistance of counsel"). After all, "[i]t is extremely common for criminal defendants not
to testify, and there are good reasons for this, as we have seen. Yet it is simple enough
after being convicted for the defendant to say, 'My lawyer wouldn't let me testify.
Therefore I'm entitled to a new trial.'" *Underwood*, 939 F.2d at 475. And that is
especially so after the lawyer—in this case, an experienced, dedicated, and well-
respected attorney—is no longer available to refute the defendant's allegation of
unprofessional conduct.

Moreover, even assuming for the sake of argument that there was a Sixth
Amendment violation, Ramos still would have to establish that he was prejudiced by not
testifying. *See Strickland,* 466 U.S. at 697 ("If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should
be followed."). That means showing "a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding below would have been different." *Id.*
at 694. Ramos cannot do so here.

First, the testimony that Ramos proffers would not have been exculpatory on all
charges. In fact, his admission that "the weapon . . . was earlier thrown from the
vehicle" in which he was the only occupant, Docket Item 196 at 2, means that he must
have possessed the weapon—something that his outstanding order of protection made
illegal (Count 4). With respect to the other two counts, it is indeed unlikely that
testimony about legitimate reasons for possessing a scale, vials, large sums of cash,

7

and a weapon would have had a "reasonable probability" of changing anything—

especially in light of the testimony that Ramos threw a bag of white powder and a

weapon from the vehicle during a high-speed chase and that cocaine powder was found

coating the inside of the vehicle immeidately after the chase. Stated another way, the

evidence of guilt was, in a word, overwhelming.

What is more, and as the government observes, had Ramos testified, he would

have been subject to cross-examination, and the government could have impeached

him with his prior criminal convictions. In addition, Ramos's attorney made the

arguments to which Ramos now alludes, repeatedly emphasizing that there were

legitimate reasons for Ramos to possess the articles in the car and that there was no

definitive evidence linking Ramos to drug-dealing. *See, e.g.,* Docket Item 90 at 2-3

(prosecutor's closing argument) ("Whenever evidence appeared to show that the

defendant was a dealer of drugs, [defense counsel] would be quick to point out

alternative possibilities: scales can be used to weigh jewelry; vials can be used to

package anything; a text message about stamps might be referring to food stamps; and

guns can be carried by people who are afraid of drive-by shootings."). There is no

reason to believe that Ramos's explanation for his purportedly legitimate reasons for

having the vials, scale, and thousands of dollars in cash might have persuaded the jury

to acquit him.

## B.    Opening Statement and Closing Argument

Ramos next argues that his attorney's "opening statement and summation

agreed with much of the government's theory of the case." Docket Item 195 at 7. Along

the same lines, Ramos laments that his attorney "made statements which were

indicative that [Ramos] was a bad person, a 'drug dealing hustler from the inner city of Buffalo.'" Docket Item 195 at 6; *see, e.g.*, Docket Item 107 at 20 (defense counsel's closing argument) ("In opening, I told you that Gregory is not a choirboy; I told you he's a street kid who lives in a high-crime area of the West Side of Buffalo, which is true; that he uses drugs from time to time, which is true; I said he hustles for money."). Ramos states that he was actually "raised in the suburbs and had spent much of [his] adult life working at legitimate jobs." *Id.* Yet his attorney "did not advise the jury of those facts." *Id.*

Strategy choices about opening statements and closing arguments are generally left to counsel. *See Yannai v. United States*, 346 F. Supp. 3d 336 (E.D.N.Y. 2018). Given the evidence that Ramos led police on a high-speed chase during which he threw a gun and a bag of white powder out of his car; that cocaine was found coating the car; that a scale and vials were found in the car; and that Ramos was carrying thousands of dollars in cash, the defense would not have gained any credibility with the jury by presenting Ramos as "raised in the suburbs" or "working at legitimate jobs." Defense counsel's choice to gain credibility with the jury by acknowledging Ramos as using drugs and "hustl[ing] for money" falls squarely within the ambit of reasonable judgment—even if Ramos did not agree with that choice and even if that choice was not fully successful. Moreover, it is worth noting that counsel's strategy succeeded in persuading the jury to acquit Ramos of one of the counts.

### C.     Cross-examination

Ramos claims that his counsel "failed to cross examine numerous witnesses . . . even though it was in Mr. Ramos' interest for him to have done so." Docket Item 195 at

9

16. In particular, Ramos notes that defense counsel did not cross-examine Agent McHugh.

Choices regarding cross-examination are generally "strategic in nature." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987). With respect to Agent McHugh, defense counsel stated the following in his closing argument:

> How about the last witness, their clean-up witness, Agent McHugh? What a cool guy. I didn't ask him any questions. You know why? He has nothing to do with this case. . . .
> The agent, who is a task force agent, which has as much experience as him, is Agent Higgins, and I did cross-examine Higgins. . . .
> You know, I'm not bashful about asking questions, right? If I didn't ask McHugh questions, it's because he has really nothing to add to this case that we didn't get from Agent Higgins.

Docket Item 107 at 19-21. Trial counsel's choice to decline to cross-examine Agent McHugh and instead to argue that his testimony was irrelevant was a valid—and some might even say wise—strategic choice.

### D.     Failure to Call Witnesses

Ramos states that counsel was ineffective for failing to "call witnesses to point out various flaws in the government's case including the source of money that was found in Mr. Ramos'[s] personal possession and in the glove compartment of his vehicle." Docket Item 195 at 6. Specifically,

> Mr. Ramos advised counsel that a witness to provide testimony as to the legitimacy of the funds found on Mr. Ramos and inside the vehicle would testify. Prior to trial, he advised counsel that Ms. Rodriguez had provided a statement that she and others had knowledge that Mr. Ramos had worked at numerous employment [sic] prior to his arrest including Just Energy, Hudson Energy,

McDonalds, Anderson Windows and Secures among other places of employment.

*Id.* at 8. These contentions suffer from the same pitfalls as Ramos's other ineffective assistance arguments.

First, whether to call witnesses is generally "a tactical decision." *Coke v. Superintendent, Green Haven Corr. Facility*, 2010 WL 475274, at *7 (W.D.N.Y. Feb. 5, 2010) (quoting *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir. 1987)). Moreover, Ramos has not shown how the proposed testimony would have made any difference. His counsel repeatedly attacked the notion that the money found on him was the result of drug sales. *See, e.g.,* Docket Item 153 at 21-22 ("Q. It could be proceeds from drugs, but it could be like an infinite number of other things, couldn't it? A. Yes."). Once again, Ramos does not suggest how any of this testimony would have made a difference. Nor did he submit sworn statements from any of the alleged witnesses regarding their proposed testimony. His general assertions that these witnesses would have shown that the money was legitimate are not enough to show ineffective assistance of counsel—let alone prejudice resulting from that alleged ineffective assistance.

### E.    Failure to Obtain and Present Certain Evidence

Ramos asserts that he "asked his then counsel to subpoena records from 'Barter Kings' an online barter site, in order to show how he obtained some of the property inside the vehicle and that it was possessed legitimately." Docket Item 195 at 6. Specifically, Ramos's affidavit notes that the vials found in his car were obtained from Barter Kings. But he fails to give any indication of what the records would have shown or, regardless of where the vials came from, how those records might have convinced a

11

jury that the vials were not drug-related.  "Such speculation cannot meet either prong of *Strickland'*s two-part test."  *Coke*, 2010 WL 475274, at *6.

Along the same lines, Ramos contends that his trial counsel failed to review Ramos's Facebook account, which—contrary to Agent Higgins's testimony—did not contain any evidence of drug-related activity.  Docket Item 239 at 4-8.  As a result of this failure, Ramos's trial counsel supposedly did not adequately cross-examine Agent Higgins.  *Id.*

Even assuming for the sake of argument that Ramos is correct that it was ineffective assistance for his attorney to not review Ramos's Facebook account and contest Agent Higgins's testimony, Ramos once again cannot show that such actions ultimately would have resulted in a different outcome.  In addition to the incriminating evidence found in Ramos's car and on his person, Agent Higgins testified that Ramos had sent numerous text messages that appeared to be drug-related.  Therefore, even if defense counsel had demonstrated that there was no incriminating evidence on Ramos's Facebook account, there is no indication that would have made any difference.

Finally, Ramos claims that "additional evidence . . . shows that the plastic bag retrieved by the Niagara Falls police department . . . was negative for any controlled substances."  *Id.* at 8.  But defense counsel elicited an admission at trial that what was collected from the street, which included the bag, did not contain cocaine.  *See* Docket Item 153 at 45 ("Q. Okay.  But as far as what was collected in the street, okay, turned out not to be cocaine?  A. That's correct.").  So the additional evidence to which Ramos points would have been nothing more than cumulative.

### F.	Objections

Ramos contends that counsel should have objected to evidence from Ramos's Facebook account that was on his seized tablet, "which had previously been undisclosed and for which the government advised it would not use information." Docket Item 195 at 7.  Ramos also asserts that defense counsel should have objected "to testimony of an item which struck a patrol vehicle's window" because "[t]here was no testimony that cocaine was ever found as a result."  *Id.*

As an initial matter, Ramos's trial counsel did object to the testimony about Ramos's Facebook account.  *See* Docket Item 153 at 58 ("This redirect examination, Your Honor, about the tablets, where [the prosecutor] had verbal conversations with the officer, in which the officer is now recalling a year ago to something that he remembered for which there's no report, that's called sandbagging.  It's not allowed under discovery. I should have had a report from the government that there was a guy or an officer claimed to have information from this tablet.  I think it's improper.  I object.").

Moreover, the failure to lodge an objection is not ineffective assistance of counsel when there could be a reasonable strategic reason for it.  *See Morrison v. McCray*, 2011 WL 1085306, at *6 (W.D.N.Y. Mar. 21, 2011) (denying an ineffective-assistance claim where it was "possible that counsel made a reasonable strategic decision not to object to [a witness's] statement to avoid highlighting it to the jury").  With respect to the item that struck the patrol car window about which Ramos complains, for example, trial counsel elicited an admission from Officer Higgins on cross-examination that the substance found on the street was not cocaine.  *See* Docket Item 153 at 45.  Because "[t]he defense may have decided not to draw attention to this matter during direct

13

examination, but instead attack the testimony on cross examination," counsel was not ineffective. *Eze v. Senkowski*, 321 F.3d 110, 131 (2d Cir. 2003).

### G.     Failure to Advise Defendant Regarding Sentence

Finally, Ramos contends that

> prior to trial the government never advised Mr. Ramos that he faced a potential of life with no parole in jail. Rather than pursuing other avenues in which to negotiate the case to avoid Mr. Ramos' potential liability, the defense ignored the facts that the potential was there for him to receive a life sentence without the chance of parole. Indeed, the United States Probation Department for the Western District of New York filed its presentence report and recommended that Mr. Ramos receive a sentence of life in prison without the chance for parole.

Docket Item 195 at 8. Additionally, Ramos asserts that counsel "did not discuss with him the possibility of a lesser included charge with respect to the possession with intent to distribute charge." *Id.*

As an initial matter, it is not correct that probation recommended a sentence of life without parole. The presentence investigation report states that, due to the statutorily authorized maximum sentences, the guideline sentencing range is not life but instead is 360 months on Counts 2 and 4 combined, plus "[a] mandatory minimum five (5) year consecutive term of imprisonment" on Count 3. Docket Item 223 at 28-29.

Moreover, Ramos fails to articulate how any of this would have made a difference. For example, he does not suggest that there was a deal on the table that he turned down because he was unaware of his potential sentence.

Accordingly, Ramos's Rule 33 motion based on ineffective assistance of counsel is denied.

## II. IMPROPER OPINION EVIDENCE (RULES 701 AND 702)

Rule 701 of the Federal Rules of Evidence provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Ramos argues that Agents Higgins and McHugh gave improper lay opinion testimony.

As an initial matter, Agent McHugh's testimony was admitted under Rule 702, not Rule 701. Ramos gives no reason why the Court should reconsider its earlier decision to allow McHugh to testify under Rule 702 as an expert on drug-trafficking. *See* Docket Item 45 (motion to exclude); Docket Item 49 (final pretrial conference); Docket Item 56 (final status conference).

Agent Higgins's testimony, however, presents a closer issue as he was a lay witness. Ramos argues that Higgins improperly gave the jury "his interpretations of text messages and calls made by [Ramos] which, [Higgins] concluded, involved purchasing and owing money to drug dealers by using a coded language." Docket Item 194 at 3-4; *see, e.g.,* Docket Item 153 at 53 ("[Q.] Do you have an opinion as to what those messages are talking about in your over 20 years of experience investigating drug cases? A. I do. Q. What is your opinion? A. My opinion is it's a solicitation for a drug transaction.").

The government does not address the 701 issue head-on, except to say that the court has wide discretion to allow testimony on redirect. In this regard, the government argues that Agent Higgins's interpretation of the text messages was not given until defense counsel opened the door on cross examination. *See* Docket Item 220 at 31-32.

In fact, that was the very reason that the Court permitted that testimony. *See* Docket Item 154 at 62-63 (THE COURT: "But I think -- I think that it's fair game since you opened the door, and [the prosecutor] did give you notice that there were incriminating drug-related transactions or conversations on the tablets that locked out.").

The Court need not decide whether it erred and whether some of Agent Higgins's testimony crossed the line into an impermissible lay opinion. Even assuming that some of the testimony was improper, Ramos has not shown a reasonable probability that excluding that testimony would have made a difference in the outcome of the trial. *See United States v. Smith*, 822 F.3d 755, 760 (5th Cir. 2016).

Consequently, Ramos's Rule 33 motion based on impermissible opinion testimony is denied.

## III.     INSUFFICIENT EVIDENCE

Ramos also moves to overturn the jury verdict on the ground that it was unsupported by substantial evidence.

A trial court examining a Rule 33 motion "must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir.1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* (quoting *Sanchez,* 969 F.2d at 1414). A court's Rule 33 authority must be exercised "sparingly" and only in "the most extraordinary circumstances." *Sanchez,* 969 F.2d at 1414.

Here, the evidence was more than sufficient. With respect to Count 2 (possession of cocaine with intent to distribute), the evidence showed that Ramos led

the police on a high-speed car chase; a police officer saw Ramos throw a bag of white

powder from the window of his car; and after the chase, the police found cocaine dust

covering the car's interior and drug-related items in the car. And if that were not enough

evidence of Ramos's intent to distribute, the government offered various text messages

and the fact that Ramos was carrying thousands of dollars in cash as circumstantial

proof.

Similarly, there was ample evidence in support of Count 3 (possession of a

firearm in furtherance of a drug-trafficking crime). Specifically, there was evidence that

along with the bag of white powder, Ramos threw a gun out of his car during the high-

speed chase, and the police later found cocaine, cash, vials, and a scale in the car.

Finally, with regard to Count 4 (possession of a firearm as a prohibited person),

there was evidence of a protective order obtained by Ramos's former girlfriend and that

Ramos knew about the order. Moreover, and as noted above, Ramos now apparently

admits that he threw the firearm out of the car and therefore possessed it. *See* Docket

Item 196 at 2.

For all of those reasons, Ramos's Rule 33 motion based on insufficient evidence

is denied.

## CONCLUSION

Ramos has not shown that his trial attorney provided ineffective assistance. He has not raised any evidentiary issue that requires another trial. And the evidence of guilt on the counts on which he was convicted was not only sufficient, it was overwhelming. Ramos's Rule 33 motions to vacate his convictions, Docket Item 194 and 195, therefore are DENIED.

SO ORDERED.


Dated:      December 26, 2019
            Buffalo, New York


                                          _s/ Lawrence J. Vilardo_
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE