UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GREGORY RAMOS,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

16-CR-74
23-CV-582
DECISION & ORDER

Before the Court are three motions filed by the pro se petitioner, Gregory Ramos: (1) to vacate his conviction under 28 U.S.C. § 2255, Docket Item 340; (2) for the release of forfeiture funds, Docket Items 331 and 353; and (3) to reduce his sentence under 18 U.S.C. § 3582, Docket Item 355.[1] For the reasons that follow, this Court denies Ramos's motions.

## BACKGROUND

On March 22, 2017, a jury convicted Ramos on one count of possessing cocaine with intent to distribute it, one count of possessing a firearm in furtherance of a drug trafficking crime, and one count of possessing a firearm by a person subject to a domestic violence order of protection. *See* Docket Item 83 (redacted indictment);

[1] Citations are to the criminal docket, 16-CR-74, and page numbers in docket citations refer to ECF pagination.

Docket Item 85 (jury verdict).[2] This Court sentenced Ramos to a total term of 101 months' imprisonment and five years' supervised release. *See* Docket Item 296. Ramos then appealed, Docket Item 298, and on May 17, 2022, the Second Circuit affirmed Ramos's conviction and sentence, *United States v. Ramos*, 2022 WL 1553040 (2d Cir. May 17, 2022) (summary order).

Ramos's conviction became final 90 days after that, on August 15, 2022. *See Rabbani v. United States*, 156 F. Supp. 3d 396, 402 (W.D.N.Y. 2016) (explaining that when petitioner has appealed, "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction"—that is, "90 days after entry of the Court of Appeals' judgment" (citation omitted)). On June 23, 2023, Ramos timely filed his petition under section 2255. Docket Item 340; *see* 28 U.S.C. § 2255(f)(1) (providing one-year statute of limitations for section 2255 petitions, which runs from "the date on which the judgment of conviction bec[ame] final"). In October 2023, Ramos moved for the release of forfeited funds, Docket Item 353, relief that he previously had requested, Docket Item 331. And in July 2025, he moved for a "[s]entence [r]eduction [under 18 U.S.C. §] 3582." Docket Item 355.

[2] The jury acquitted Ramos on one count of possessing cocaine base with the intent to distribute it. *See* Docket Items 83 and 85.

## DISCUSSION

### I. MOTION TO VACATE UNDER 28 U.S.C. § 2255

#### A. Legal Principles

Ramos first seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). He bases his claim on the alleged ineffective assistance of his trial counsel, the insufficiency of the evidence at trial, and the fact that two of his state court convictions subsequently were vacated. *See generally* Docket Items 340 and 342.

"It is well established that a [section] 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (citation and internal quotation marks omitted). Additionally, under the so-called mandate rule, "matters that could have been but were not first raised on appeal are also barred from consideration in a [s]ection 2255 proceeding." *United States v. Gigliotti*, 2023 WL 4532210, at *1 (E.D.N.Y. July 13, 2023); *see also Barry v. United States*, 2015 WL 3795866, at *2 n.3 (E.D.N.Y. June 15, 2015) (collecting cases). Thus, "a defendant who raises on direct appeal ineffective assistance claims based on the strategies, actions, or inactions of counsel that can be, and are, adjudicated on the merits on the trial record, is precluded from raising new or repetitive claims based on the same strategies, actions, or inactions in a [s]ection 2255

proceeding.*"* *Mui v. United States*, 614 F.3d 50, 51 (2d Cir. 2010).

That being said, "such a defendant is not precluded from raising new ineffective assistance claims based on different strategies, actions, or inactions of counsel in a subsequent [s]ection 2255 proceeding." *Id.* But "where a defendant alleges varying factual predicates to support identical legal claims relating to a particular event, all claims constitute a single 'ground' for relief for purposes of applying the mandate rule in collateral proceedings." *Id.* at 55.

An evidentiary hearing is required on a section 2255 petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In other words, "[t]o obtain an evidentiary hearing, the petitioner must allege a 'plausible claim' for ineffective assistance of counsel." *Jaramillo v. United States*, 2022 WL 17736628, at *4 (S.D.N.Y. Dec. 16, 2022) (quoting *United States v. Tarricone*, 996 F.2d 1414, 1417-18 (2d Cir. 1993)). "'Bald allegations' unsupported by evidentiary facts do not" warrant a hearing. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)) (quoting *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977)); *see also Lake v. United States*, 465 F. App'x 33, 34-35 (2d Cir. 2012) (summary order) (an evidentiary "hearing is not required when, 'viewing the evidentiary proffers . . . and record in the light most favorable to the petitioner,' it is clear that the petitioner has failed to establish a 'plausible claim of ineffective assistance of counsel'" (quoting *Puglisi*, 586 F.3d at 213)).

### B. Ineffective Assistance of Counsel Claims

To establish ineffective assistance of counsel, a defendant must "(1) demonstrate that . . . counsel's performance 'fell below an objective standard of reasonableness' in

light of ‘prevailing professional norms,’ and (2) ‘affirmatively prove prejudice’ arising from counsel’s allegedly deficient representation.” *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (internal citation omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)). District courts need not address both components if a petitioner fails to establish either one. *Strickland*, 466 U.S. at 697; *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018).

Under the first prong, there is a “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” *Strickland*, 466 U.S. at 689. The petitioner may overcome this presumption by showing “that counsel’s representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.” *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689. In considering whether counsel “failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances,” *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis omitted), courts look to the totality of the circumstances, are “highly deferential,” and make “every effort . . . to eliminate the distorting effects of hindsight,” *Strickland*, 466 U.S. at 688-89. Under the second prong, the petitioner must show “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” *Id.* at 694.

Here, Ramos asserts a number of claims of ineffective assistance, including complaints about his counsel’s (1) alleged refusal to allow him to testify, Docket Item 340 at 3-5; (2) opening statement and closing argument, *see id.* at 18-19; (3) decisions about cross-examination, *id.* at 19; (4) failure to call certain witnesses, *id.* at 18, 20; (5)

failure to obtain certain evidence, *id.* at 18; (6) failure to object to certain evidence, *id.* at 19; and (7) failure to advise Ramos about his potential sentence, *id.* at 12-13. But Ramos raised these same issues in his post-trial motions,[3] and, after careful analysis, this Court rejected those arguments. *See* Docket Item 241 at 6-8 (alleged refusal to allow Ramos to testify); *id.* at 8-9 (opening statement and closing argument); *id.* at 9-10 (cross-examination); *id.* at 10-11 (failure to call witnesses); *id.* at 11-12 (failure to obtain and present certain evidence); *id.* at 13 (objections); *id.* at 14 (failure to advise Ramos regarding sentence). Because the Second Circuit affirmed this Court's decision*, see Ramos*, 2022 WL 1553040, at *2 ("Ramos raises 19 instances of defense counsel allegedly providing him with ineffective assistance of counsel. We affirm the district court's finding that Ramos failed to show that he was prejudiced by these various errors."), Ramos cannot raise these same arguments again, *see Mui*, 614 F.3d at 51. And even if he could, this Court would reject them for the same reasons it did before.

### C. This Court's Denial of Ramos's Rule 29 and 33 Motions and Sufficiency of the Evidence

Ramos argues that this Court incorrectly found that there was sufficient evidence supporting his convictions. Docket Item 340 at 6. Once again, the Second Circuit considered and rejected this argument. *See Ramos*, 2022 WL 1553040, at *2. It therefore is precluded, *see Mui*, 614 F.3d at 51, and even if it were not, this Court would again reject it for the same reasons.

[3] Indeed, Ramos's 2255 motion appears to consist of affidavits he previously submitted to this Court in support of his post-trial motions. *Compare* Docket Items 195 and 196, *with* Docket Item 340.

**D. Vacated State Convictions**

Finally, Ramos says that since the time he was sentenced in this case, his state court convictions for murder in the second degree and criminal possession of a weapon in the second degree have been vacated. Docket Item 342 at 1*; see People v. Ramos*, 218 A.D.3d 1113, 1116, 194 N.Y.S.3d 612, 616 (4th Dep't 2023) (concluding that "viewing the evidence in light of the elements of the crimes as charged to the jury, the verdict [wa]s against the weight of the evidence" (citations omitted)). Thus, Ramos says, this "removes a conviction" that was included in his Guidelines calculation. Docket Item 342 at 1.

But those convictions did not affect the calculation of Ramos's criminal history score in the Presentence Investigation Report ("PSR")*, see* Docket Item 291 ¶ 72 (assigning zero points for murder and criminal possession of a weapon convictions), and therefore did not affect his Guidelines range. And this Court adopted the PSR's Guidelines calculation—including its determination that Ramos fell into Criminal History Category V based on 10 criminal history points—and ultimately sentenced Ramos within the Guidelines range. *See* Docket Item 306 at 29, 34, 50; Docket Item 291 ¶ 74.

What is more, the Court rejected the PSR's finding that the murder and weapon convictions constituted relevant conduct, *see* Docket Item 294 at 2-9, and specifically stated at sentencing that it was "not sentencing [Ramos] for the murder," Docket Item 306 at 57-58. And while the Court allowed paragraphs describing the murder to remain in the PSR and noted that it could "consider that as part of his criminal history," Docket Item 306 at 25, there is no indication that anything would have been different in this Court's sentencing decision without those two convictions.

Indeed, the Court explained that one main reason it chose the high end of the Guidelines range was because it found that Ramos had thrown a bag of drugs out the car window during a high-speed chase and his Guidelines range was therefore lower than it otherwise would have been. *Id.* at 56 ("[Y]ou threw a bag of drugs out the window and, therefore, were sentenced based on a smaller amount of drugs than you possessed. I -- I took that into account. And so I don't often sentence at the high end of the guidelines, I'm doing it here for that reason."); *see also* Docket Item 291 ¶ 20 (PSR's noting that police officers observed defendant throw an object out the car window and that when the object struck the police car windshield "a cloud of white powdery substance dissipate[d] in the air"). Moreover, as the Court noted, Ramos had an extensive criminal history apart from the murder and weapon convictions. *See* Docket Item 306 at 55 ("You have a long criminal history. You are a criminal history category V on a scale of I to VI at the age of 29. That's not easy to do, and that's not good."). So there is no reason to think those two convictions—which, as explained above, did not affect Ramos's criminal history category or the Guidelines range—would have tipped the balance.

The Court therefore denies Ramos's motion based on his newly vacated convictions.

## II. MOTIONS FOR THE RELEASE OF FUNDS

On February 13, 2020, this Court entered a preliminary order of forfeiture for one firearm, various rounds of ammunition, and the sums of $3,640 and $840. Docket Item 244. At sentencing, Ramos's counsel argued "that the money should be returned to him" because there was no evidence that it constituted proceeds of illegal activity.

Docket Item 306 at 61. This Court explained that to seek that relief, Ramos would "have to make a motion for reconsideration of the preliminary order of forfeiture." *Id.* at 62. But Ramos ultimately did not move for reconsideration, and on December 22, 2020, this Court entered judgment. Docket Item 299. Ramos filed a notice of appeal. Docket Item 298.

On June 9, 2022, following the issuance of the Second Circuit's mandate on Ramos's appeal, this Court entered a final order of forfeiture. Docket Item 329. About five months later, Ramos filed a motion for release of the forfeited funds, Docket Item 331, which this Court construed as a motion for reconsideration of this Court's prior decisions regarding Ramos's requests to release the seized funds, *see* Docket Item 332. The government responded, arguing that this Court lacked jurisdiction over a motion under Federal Rule of Criminal Procedure 41(g) for return of property as well as any motion to reconsider decisions the Court made prior to entering judgment. *See* Docket Item 338 at 9. Rather, the government explained, Ramos's remedy to challenge the forfeiture was a direct appeal. *See id.* at 12. This Court agrees.

Rule 41(g) provides, in pertinent part, that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). But "[a] Rule 41(g) motion is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006) (citing *U.S. (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Auto.*, 972 F.2d 472, 479 (2d Cir. 1992)). Thus, it typically is available only "before any forfeiture proceedings have been initiated, or before any criminal charges have been

filed" or "after criminal proceedings have concluded to recover the defendant's property when the property is no longer needed as evidence—*unless, of course, it has been forfeited in the course of those proceedings*." *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) (emphasis added).

Here, as explained above, this Court entered a preliminary order of forfeiture, and Ramos did not move for reconsideration of that order. Thus, it became part of the judgment, which was affirmed by the Second Circuit. *See Ramos*, 2022 WL 1553040, at *3; *see also* Fed. R. Crim. P. 32.2(b)(4)(A) ("At sentencing—or at any time before sentencing if the defendant consents—the preliminary forfeiture order becomes final as to the defendant."); *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007) ("Young's interest in the disputed funds was resolved through the jury's verdict, the 'preliminary' order of forfeiture, and the judgment of conviction."); *United States v. Pelullo*, 178 F.3d 196, 202 (3d Cir. 1999) ("[T]he order of forfeiture entered at sentencing is a final order with respect to the defendant from which he can appeal.").[4] And as a result, Rule 41(g) is not a proper vehicle for relief. *See United States v. Connelly*, 2019 WL 5966445, at *3 (D. Conn. May 7, 2019) ("[A] criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all." (quoting *Young*, 489 F.3d at 315)). Nor can this Court entertain a motion for reconsideration regarding its decision on forfeiture: it lost jurisdiction to do so once a notice of appeal was filed. *See id.* at *2.

[4] The final order of forfeiture, which was entered following Ramos's appeal, "resolve[d] any claims by third parties to the property," but Ramos's "own interest in [the forfeited property] was extinguished as part of the judgment." *See United States v. Connelly*, 2019 WL 5966445, at *3 (D. Conn. May 7, 2019).

For all those reasons, this Court denies Ramos's motions for return of his forfeited property.[5]

## III. MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582

Under 18 U.S.C. § 3582, a court "may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the Court's "analysis does not end with a finding that 'compelling and extraordinary reasons' warrant compassionate release." *United States v. Daugerdas*, 613 F. Supp. 3d 807, 811 (S.D.N.Y. 2020). Rather, the Court also must "consider the factors set forth in section 3553(a)." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)). And for that reason, a conclusion that a reduction of the defendant's sentence would not be consistent with section 3553(a) provides an "independent basis" to deny a motion under section 3582, *United States v. Fleming*, 5 F.4th 189, 194 (2d Cir. 2021).

Here, Ramos argues that he is entitled to a sentence "reduction due to the lack of [the Federal Bureau of Prisons'] effectiveness to efficiently abide the sentencing purposes set forth in 18 U.S.C. [§] 3553(a)(2)." Docket Item 355 at 1. He complains about the conditions of his confinement, including that there is "no expansion of

---

[5] Finally, even if this Court were to construe Ramos's motion as being brought under section 2255, it still would not succeed. The Second Circuit has held that section 2255 was not a proper vehicle to challenge a restitution order because the petitioner was "not in custody in relation to the claims against his order of restitution." *Kaminski v. United States*, 339 F.3d 84, 91 (2d Cir. 2003). The same logic "would appear to apply to criminal forfeitures as well." *Winkelman v. United States*, 494 F. App'x 217, 220 n.4 (3d Cir. 2012) (per curiam) (citing *Kaminski*, 339 F.3d at 87). Put another way, there is no connection between Ramos's being in custody—the heart of a section 2255 petition—and his forfeited property.

education or vocational [training] achieved or obtainable in this facility" and that "[t]he conditions are ridiculous locking down for no true safety or security reasons." *Id.*

Although the Court has sympathy for Ramos's concerns, they do not clear the very high bar necessary to establish an extraordinary and compelling reason for a sentence reduction. *See, e.g.*, *United States v. Butler*, 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (denying compassionate release motion because defendant had "not demonstrated concretely that the prison conditions he faced . . . were especially severe, so as to rise to the level of extraordinary and compelling circumstances justifying early release"). Moreover, even if Ramos could establish an extraordinary and compelling reason, he still would not be eligible for compassionate release because the section 3553(a) factors do not warrant a sentence reduction at this time. As this Court explained at sentencing, the sentencing factors—including Ramos's extensive criminal history and the nature and seriousness of the offense—warranted "a very significant term of imprisonment" at the high end of the Guidelines range. *See* Docket Item 306 at 55-56. Among other things, and as noted above, the Court observed that Ramos had thrown a bag of drugs out the window and that his Guidelines range therefore was "based on a smaller amount of drugs than [he] possessed." *Id.* at 56. Thus, this Court finds that a sentence reduction at this time "would undermine the goals of the original sentence." *See United States v. Tisdale*, 2022 WL 16951307, at *3 (S.D.N.Y. Nov. 15, 2022) (quoting *Musa v. United States*, 502 F. Supp. 3d 803, 810 (S.D.N.Y. 2020)).

For all those reasons, Ramos's motion to reduce his sentence is denied without prejudice.[6]

## CONCLUSION

For the reasons stated above, Ramos's motion to vacate under 28 U.S.C. § 2255, Docket Item 340, is DENIED. His petition in W.D.N.Y. Case No. 23-cv-582 is DISMISSED, and the Clerk of the Court shall close that case. Ramos's motions for release of funds, Docket Items 331 and 353, also are denied, and his motion to reduce his sentence, Docket Item 355, is DENIED WITHOUT PREJUDICE.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962). The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability.

[6] Ramos also takes issue with the Federal Bureau of Prisons' calculation of his time served on his federal sentence. *See* Docket Item 355 at 2. The Court will forward Ramos's submission to the Office of the Federal Public Defender to review so that it can decide whether to file anything further on this issue.

Ramos must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 14 days of the date this decision and order.[7] Fed. R. App. P. 4(b)(1)(A). Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: August 14, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

[7] Because a section 2255 petition is a civil matter, Ramos has up to 60 days to file a notice of appeal with respect to this Court's dismissal of his section 2255 petition, *see Williams v. United States*, 984 F.2d 28, 31 (2d Cir. 1993). But he must appeal this Court's denial of his motions in his criminal case within 14 days. *See United States v. Williams*, 2023 WL 1977601, at *1 (2d Cir. Feb. 14, 2023) (summary order).